# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE SEARCH OF )
) Case No. _____
)
Brown Nextel Motorola i880 serial number 364VHS1QZ0 )
Black Nextel Motorola i560 serial number 364THN8C7R )
White Nokia RM-181 model 5200 IMEI: 352733/01/114313/8 )
Silver T Moble iPAQ serial number TWG43003Z3 )
Dark blue Motorola serial number G20WH05078 )
Black Samsung Up Stage serial number YO2P726BS/-- )
Black and silver Motorola AT&T serial number F42MHZCGBF )
Black and gray Motorola i425 cellular phone model H98XAH6JR2AN )
)

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

'08 MJ 1835

I __Lucia Cabral-DeArmas__ being duly sworn depose and say:

I am a(n) __Special Agent with the United States Department of Homeland Security__ and have reason to believe that __ on the person of or _x_ on the property or premises known as

  Described in Attachment "A".

in the Southern District of California, there is now concealed a certain person or property, namely

  Described in Attachment "B".

which is property that constitutes evidence of the commission of a criminal offense concerning a
violation of Title ___8___ United States Code, Section(s) __1324__, and
violation of Title _____ United States Code, Section(s) _____, and
violation of Title _____ United States Code, Section(s) _____.

The facts to support a finding of Probable Cause are as follows:

  Described in supporting affidavit

Continued on the attached sheets and made part thereof.
__X__ Yes _____ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

6/13/2008 at 3:10 p.m. at San Diego, Calif.
Date/Time issued             City and State

**RUBEN B. BROOKS**
**U.S. MAGISTRATE JUDGE**
_____   _____
Name and Title of Judicial Officer   Signature of Judicial Officer

# AFFIDAVIT

STATE OF CALIFORNIA         )
                            ) ss
SOUTHERN DISTRICT OF CALIFORNIA )

## **PRELIMINARY MATTERS**

I, Lucia Cabral-DeArmas, having been duly sworn, do depose and state as follows:

1. I am a Special Agent ("SA") with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") Office of Investigations ("OI"), and am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), empowered by the law to conduct investigations of, and to make arrests for, the offenses enumerated in 18 U.S.C. § 2516.

2. I have been a Special Agent with ICE OI since August of 2004 and have been assigned to work Alien Smuggling/Trafficking investigations. As an ICE SA I have received specialized training related to criminal violations of Title 8, including Courses in laws pertaining to immigration and smuggling, customs law, the investigation of smuggling operations and organizations, financial investigations, money laundering and wire fraud, fraud investigation, the make-up and operation of criminal groups and organizations, and human trafficking/smuggling laws and investigations. Prior to my employment with ICE, I was a Border Patrol Agent with the United States Department of Justice for approximately twelve years.

3. Based on my training and experience I am familiar with methods used by alien smugglers in their operations, including the use of cellular telephones to coordinate illicit endeavors with co-conspirators, such as;

1

acquisition/recruitment, staging, transportation, and coordination with sponsors to exchange aliens for compensation.

4. I also have learned that it is common for individuals involved in alien smuggling to communicate with co-conspirators by means of cellular telephones, often storing information identifying co-conspirators in the phones.

## INTRODUCTION

5. On June 01, 2008, Border Patrol Agents seized three (3) cellular phones, one (1) brown Nextel Motorola i880 serial number 364VHS1QZ0, one (1) black Nextel Motorola i560 serial number 364THN8C7R, one (1) white Nokia RM-181 model 5200 IMEI: 352733/01/114313/8 (Code 052059LN1412), from Christopher Saint Lucero born October 12, 1973, a Transportation Officer employed by Wackenhut Corporation, Transportation Division, a private company contracted by DHS to house and transport detainees. The brown Nextel Motorola i880 serial number 364VHS1QZ0 was seized incident to the lawful arrest of Christopher Saint Lucero. The other two cellular phones, one (1) black Nextel Motorola i560 serial number 364THN8C7R, one (1) white Nokia RM-181 model 5200 IMEI: 352733/01/114313/8 (Code 052059LN1412), were found in Christopher Saint Lucero's privately owned vehicle, a 2003 Toyota Tundra bearing California license plate 8J45800, during an inventory search incident to arrest.

6. On June 01, 2008, Border Patrol Agents also seized five (5) cellular phones, from Manley Lamont Smith born on August 23, 1969, a Transportation Officer employed by Wackenhut Corporation, Transportation Davison arrested for alien smuggling. Manley Lamont Smith was involved in assisting Christopher Saint Lucero in the smuggling of illegal aliens. One (1) cellular phone a black and gray Motorola i425

cellular phone model H98XAH6JR2AN was seized incident to his arrest. Four (4) additional cellular phones were found in Manley Lamont Smith's privately owned vehicle, a 2003 black Jaguar bearing California license plate 5ZDJ068, which was seized and inventoried by Border Patrol Agents. The cellular phones found in the black Jaguar, one (1) silver T Moble iPAQ serial number TWG43003Z3, one (1) dark blue Motorola serial number G20WH05078, one (1) black Samsung Up Stage serial number YO2P726BS/--, one (1) black and silver Motorola AT&T serial number F42MHZCGBF.

## LOCATION TO BE SEARCHED:

7. I submit that the facts contained in the numbered paragraphs below are accurate, and that they demonstrate that there is probable cause to believe that the aforementioned, lawfully seized phones contained evidence of violations of Title 8 United States Code, Section 1324, Alien smuggling. The locations to be searched are described more fully in Attachment A, which is hereby incorporated by reference.

## PROPERTY OR ITEMS TO BE SEIZED:

8. Names, telephone numbers (unit number, home, work, recent calls, telephonic address book, cellular numbers) of other known and unknown criminal associates and all video and still photographs captured by the devices, including stored text messages, mini or micro secure digital ("SD") cards inserted into the phone as applicable.

9. Since this affidavit is being submitted for the limited purpose of securing a search warrant to review the contents of the cell phones described, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to establish the foundation pursuant to the issuance of a search warrant for the contents of the eight different cellular

telephones, as described. See Attachment B for further details, which are hereby incorporated by reference.

### SPECIFIC FACTS:

10. On or about May 30, 2008, Border Patrol Agents received information from Wackenhut Corporation Transportation Officer Vincent Reyes that he believed Wackenhut Sergeant Christopher Saint Lucero ("Saint") was involved in alien smuggling. Border Patrol Agents assigned to the San Diego Sector Smuggling Interdiction Group ("SIG") set up an undercover operation in order to confirm if in fact Sergeant Christopher Saint Lucero was involved in alien smuggling.

11. On or about June 01, 2008, SIG Agent Manuel Ortiz ("Agent Ortiz") who was posing as an illegal alien was placed in a holding cell at the Chula Vista Border Patrol Station, along with William Edgardo Romero Estrada ("Romero") an illegal alien from El Salvador who was recruited by Border Patrol Agents to assist in the undercover operation. Both Agent Ortiz and Romero were processed for voluntary return to Mexico. On the same day at approximately 11:00 a.m., Saint and his partner, Transportation Officer Hayes ("Hayes") arrived in a Wackenhut bus at the Chula Vista Border Patrol Station to pick up the detainees who were being returned to Mexico voluntarily. Agent Ortiz and Romero were among the detainees who were loaded in the bus to be transported to the international border near the San Ysidro Port of Entry to be returned to Mexico. At the international border before detainees are allowed to enter into Mexico, Mexican Immigration Officers question the detainees about their citizenship. Detainees who are not Mexican Citizens are returned to the Wackenhut Transportation Officers.

12. Agent Ortiz and Romero were determined not to be citizens of Mexico and were rejected by the Mexican Immigration Officers and returned to Saint and Hayes. As Saint was placing Agent Ortiz and Romero in hand cuffs, Agent Ortiz asked Saint in Spanish to give them a break. Saint replied in Spanish and said "Give you a break? Do you have money?" As Saint escorted Agent Ortiz and Romero back onto the bus he asked them where they were going. Agent Ortiz and Romero replied that they were going to Los Angels, California. Saint again asked if they had any money. Saint then negotiated with Agent Ortiz and Romero and agreed to charge Agent Ortiz two thousand dollars ($2000.00" and Romero three thousand dollars ($3000.00) to smuggle them to Los Angeles, California. Once the price was agreed upon, Agent Ortiz saw Saint use a cellular phone to make a phone call.

13. Agent Ortiz and Romero were transported back to the Chula Vista Border Patrol Station compound. As Hayes entered the Chula Vista Border Patrol compound he was instructed by Saint to pull the bus over near an area were gas pumps are located. Hayes questioned Saint and asked why they were pulling over instead of taking the detainees directly to the Chula Vista processing office. Saint told Hayes he was going to personally transport Agent Ortiz and Romero to the processing office in a Wackenhut Jeep. At that time Wackenhut Officer Manley Lamont Smith ("Smith") pulled up alongside the bus. Saint then dismissed Hayes and told him to go to lunch. Once Hayes departed the area, Saint ordered Agent Ortiz and Romero to exit the bus and get in the Jeep. As Agent Ortiz and Romero boarded the Jeep, Agent Ortiz overheard Saint tell Smith in English, "five thousand bucks." Agent Ortiz heard Smith reply, "I have my car here, I can take them or I can stash them until later." Saint got into the passenger seat of the

jeep and, at Saint's request, Smith drove the aliens to Smith's 2003 black Jaguar. Once at Smith's car, however, Saint decided not to leave the detainees in the Jaguar and told Smith he was going to drop them off himself. Saint asked Smith to call him later. Smith agreed with Saint and drove to the Wackenhut office located in the same compound as the Chula Vista Border Patrol Station. Smith exited the Jeep and Saint got in the driver's seat and drove Agent Ortiz and Romero to Howard Lane Neighborhood Park located on Dairy Mart Road and Beyer Boulevard, in San Diego, California.

14. On the way to the park, Saint told Agent Ortiz and Romero in Spanish that he was going to call his brother-in-law to pick them up. If his brother-in-law was unable to pick them up he would return within one to five hours to pick them up. Approximately an hour later, after dropping Agent Ortiz and Romero off at the park, Saint returned to pick them up in a black 2003 Toyota Tundra Pick-Up Truck bearing California license plate 8J45800. Saint pulled into the park and motioned with his hand for Agent Ortiz and Romero to get in his vehicle. Agent Ortiz and Romero did as they were told and got in Saint's vehicle. However, before Saint could drive away he was arrested by Border Patrol Agents.

15. Saint was transported back to the Chula Vista Border Patrol SIG Office to be interviewed and processed. During a post Miranda statement, Saint admitted that he dropped of Agent Ortiz and Romero who he believed to be illegal aliens at a park. Saint also admitted that he intended to smuggle Agent Ortiz and Romero to Los Angeles, California for a fee. Saint informed agents that Smith knew and was involved in the smuggling plans. Border Patrol Agents walked over to the Wackenhut Office and arrested Smith. During his arrest, Smith was in possession of black and gray Motorola i425 cellular phone model

H98XAH6JR2AN. Border Patrol Agents also seized Smiths vehicle, a 2003 Jaguar S Type bearing California License Plate number 5ZDJ068. During an inventory search of the vehicle, agents located four additional cellular phones, one (1) silver T Moble iPAQ serial number TWG43003Z3, one (1) dark blue Motorola serial number G20WH05078, one (1) black Samsung Up Stage serial number YO2P726BS/--, one (1) black and silver Motorola AT&T serial number F42MHZCGBF.

## CONCLUSION:

16. Based on the foregoing, your affiant believes probable cause exists that the phones seized from Christopher Saint Lucero and Manley L. Smith., incident to their lawful arrest on June 01, 2008, contain records and data that constitutes evidence of the commission of an offense under Title 8 United States Code, Section 1324, Alien smuggling; contraband and fruits of such offense(s); and property designed and intended for use and which had been used as the means of committing such an offense or offenses. Such records or information are more particularly described in Attachment B to this Application and Affidavit for Search Warrant.

_Lucia Cabral-DeArmas_
Special Agent
U. S. Department of Homeland Security
Immigration and Customs Enforcement
Office of Investigations

Subscribed and sworn to before me on this 12th day of June 2008.

_____
U.S. Magistrate Judge

# ATTACHMENT A

The place to be searched pursuant to the warrant sought is the premises known as:

1. Brown Nextel Motorola i880 serial number 364VHS1QZ0
2. Black Nextel Motorola i560 serial number 364THN8C7R
3. White Nokia RM-181 model 5200 IMEI: 352733/01/114313/8 (Code 052059LN1412)
4. Silver T Moble iPAQ serial number TWG43003Z3
5. Dark blue Motorola serial number G20WH05078
6. Black Samsung Up Stage serial number YO2P726BS/--
7. Black and silver Motorola AT&T serial number F42MHZCGBF
8. Black and gray Motorola i425 cellular phone model H98XAH6JR2AN

**ATTACHMENT B**

1. Items to be seized from the cellular/video phone described herein and per Attachment A:

    a. the telephone number and/or name and identity assigned to the phone;

    b. digital, cellular and/or telephone number, and/or names and identities stored in the directory or phonebook;

    c. telephone numbers dialed from the phone and stored in memory;

    d. telephone numbers received by the phone and stored in memory; and

    e. videos and still photograph captured and retained in the phone's memory.

    f. Text messages stored in the phone's memory.

NOTE: Memory constitutes the phone's internal memory. In addition, memory also includes mini or micro secured digital ("SD") cards inserted into the phones.

The aforementioned phones are believed to contain electronic data constituting evidence of the commission of a criminal offense, and electronic data which is and has been used as the means for committing a criminal offense, to wit: violations of Title 8 United States Code, Section 1324.

Agents of the Department of Homeland Security, Office Immigration and Customs Enforcement Office of Investigations will deliver the cell phones to Immigration and Customs Enforcement Computer Forensic Agents (CFA), who are trained or have appropriate experience in the area of information and data retrieval relative to cellular phones. The aforementioned CFA may be able to determine the PIN, turn

on the cell phone, and retrieve data from the cell phone. Unlike typical computers, cell phones do not have hard drives and store information in volatile memory. Current technology does not provide solutions for imaging the data stored in cell phone memory. Consequently, the phone will have to be powered up and turned on by CFA trained to examine such devices. The examination may be delayed due to the lack of the appropriate charging device. The CFA will need to manually analyze the cell phone and its functions and record their findings using digital photography. This process is time and labor intensive and, depending upon the workload of the CFA, may several weeks or longer.